Kay SAMUELS

v.

**Det. Eric SMITH, Det. James Howard III, Det. Franco Sanzo, Det. Craig Fournier, Off. Mark Samsel, Sgt. Paul Samuels, Sgt. D. Roberts, Det. Gamble, Det. Morin, Det. Martin, and Det. Kevin Mellon.**

**Civ. No. 3:93–149 (JAC).**

United States District Court, D. Connecticut.

Dec. 21, 1993.

960

Steven L. Seligman, Katz & Seligman, Hartford, CT, for plaintiff.

Stephen R. Sarnoski Asst. Atty. Gen., Hartford, CT, for defendants Paul Samuels, Eric Smith, Kevin Mellon, James Howard, III, Franco Sanzo, Craig Fournier, and Mark Samsel.

Terrence M. O'Neill, James J. Szerejko, Halloran & Sage, Hartford, CT, for defendants D. Roberts, Gamble, Morin, and Martin.

## AMENDED RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, Chief Judge:

The plaintiff, Kay Samuels, is a resident of 424 Garden Street, Apartment 1A, in Hartford, Connecticut. Defendants Paul Samuels, Eric Smith, Kevin Mellon, James Howard, III, Franco Sanzo, Craig Fournier, and Mark Samsel are members of the Connecticut Statewide Narcotics Task Force ("state defendants" and "Task Force," respectively); defendants D. Roberts, Gamble, Morin, and Martin are members of the Vice and Narcotics Division of the Hartford Police Department ("city defendants").

The plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging a violation of her rights secured by the Fourth and Fourteenth Amendments to the United States Constitution. Pending before the court is the state defendants' Motion for Summary Judgment (filed Aug. 9, 1993).[1]

---

1. Although only the state defendants have filed a motion for summary judgment, the plaintiff conceded at oral argument that a decision to grant this motion would be dispositive of the entire action. Conversely, a decision to deny the motion would preclude a motion for summary judgment by the city defendants. *See, e.g.,* note 2, *infra.*

## BACKGROUND

On August 13, 1992, U.S. Postal Inspector Terry Loftus informed the Task Force that the Hartford Post Office had received an express mail package which contained a shipment of approximately three pounds of marijuana. The package was addressed to Rick Thompson at 422 Garden Street, Apartment 1A, in Hartford, Connecticut.

On August 14, 1992, the Task Force obtained a search and seizure warrant for these premises. The warrant states, in relevant part:

> Enter into or upon and search the place or thing described in the foregoing affidavit and application, to wit: 422 Garden Street, Apartment 1A, Hartford, Connecticut. A brown brick multi-family building. The numbers 424 and 422 are on the front of the building, on either side of the entrance way.

On that date, pursuant to a plan developed by the Task Force, a U.S. Postal Inspector dressed as a postal carrier delivered the package. Members of the Task Force, the Hartford Police Department, and the U.S. Postal Inspectors were also present, in order to provide any needed backup assistance and to execute the search and seizure warrant immediately upon receipt of the package.

After the package was delivered, several of the defendants entered the building to execute the warrant from the rear of the building. Instead of entering 422 Garden Street, Apartment 1A, however, these defendants actually entered 424 Garden Street, Apartment 1A, where the plaintiff resides. It is this mistaken execution of an otherwise valid search and seizure warrant which precipitated this action.

The plaintiff alleges that the defendants entered her residence suddenly and without a warrant. The plaintiff further alleges that the defendants, with great force and violence, seized, assaulted, and battered her, and that they conducted an invasive and destructive search of her home and property.

According to the plaintiff, the defendants' conduct was illegal, unreasonable, and unjustified. The plaintiff alleges, pursuant to 42 U.S.C. § 1983, that the defendants, acting under the color of state law, violated her civil rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution. In return for her injuries, the plaintiff seeks compensatory damages in the amount of $200,000, punitive damages in the amount of $250,000, and attorney's fees pursuant to 42 U.S.C. § 1988.

The state defendants, on the other hand, argue that no constitutional violation occurred. According to the state defendants, there were two distinct "teams" to execute the search and seizure—one at the front of the building ("front door team"), and one at the rear of the building ("back door team"). The state defendants claim that, after the package was delivered, members of the front door team attempted to commence the execution of the warrant, but they were prevented from doing so because the front door was locked. The state defendants further represent that the front door team then waved to the back door team to indicate the whereabouts inside the building of the woman who had accepted the package. They maintain that the back door team misunderstood this communication to mean that the front door team was pointing to the residence covered by the warrant. They also contend that the members of the back door team were under the impression that they were entering the building through a common hallway, and that, once they became aware that they were in fact inside a residence, they thought they were in the correct apartment. Finally, the state defendants claim that the officers terminated their search and departed immediately upon learning that they were in the wrong apartment.

The state defendants filed a motion for summary judgment on August 9, 1993. After full briefing, the court held oral argument on December 6, 1993, at which the court reserved decision.

## DISCUSSION

### I.

In support of their motion for summary judgment, the state defendants make three principal arguments. First, they contend that, as state officials, the mere lack of due

care in the exercise of their duties does not give rise to a constitutional violation. More specifically, the state defendants maintain that the mistaken execution of a search and seizure warrant upon premises other than those described in the warrant does not violate the Fourth Amendment. They compare this case to *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987)—where the Supreme Court permitted the introduction of evidence obtained from the mistaken execution of a search and seizure warrant.

According to the state defendants, their affidavits firmly establish that the entry into the plaintiff's apartment constituted only simple, garden-variety negligence. They argue that the plaintiff's allegations of reckless, callous disregard and/or intentional misconduct cannot be supported on this record.

Second, the state defendants maintain that the manner in which the officers conducted the search did not violate the plaintiff's constitutional rights. In the state defendants' view, the record compels the conclusion that the officers acted reasonably under the circumstances.

The state defendants claim that they limited their activities to an initial effort to secure the occupants and conduct a routine protective security sweep, and that they remained for only a brief period of time. They argue that the police are necessarily given wide latitude in the execution of narcotics-related search and seizure warrants, and that their conduct here is far from the level of egregious and grossly disproportionate conduct that would trigger a constitutional violation.

Finally, the state defendants argue that they are entitled to qualified immunity for their acts, which were reasonable under the circumstances and which were performed under a good faith, albeit mistaken, belief that they were properly executing a valid, narcotics-related search and seizure warrant.

In response, the plaintiff first argues that the defendants' entry into and search of the plaintiff's apartment was unsupported by the warrant, and that it was, as a result, *per se* unreasonable. According to the plaintiff, the defendants should have known, on the face of the warrant, that they were entering the wrong apartment. The defendants' conduct, in the plaintiff's view, was not objectively reasonable. The plaintiff therefore contends that this case is readily distinguished from *Maryland v. Garrison*.

The plaintiff also maintains that the manner in which the search was executed—once the defendants were inside the apartment—was not objectively reasonable, and that the defendants' state of mind is irrelevant to this conclusion.

The plaintiff next argues that—to the extent that the defendants attempt to justify their entry based on a theory of "hot pursuit" and exigent circumstances—genuine issues of fact remain, thereby precluding summary judgment for the defendants.

Finally, the plaintiff contends that the defendants' operative assumption that they will meet violence whenever executing narcotics-related search warrant imposes upon them a duty to take reasonable precautions against entering the wrong premises.

## II.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in the original). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986) (Feinberg, C.J.), *cert.*

*denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Finally, " 'mere conclusory allegations or denials' " in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (*quoting S.E.C. v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)).

### III.

This action presents three distinct questions: (1) whether the defendants' mistaken execution of a valid search and seizure warrant was objectively reasonable; (2) whether the defendants' conduct, once inside the plaintiff's apartment, was also objectively reasonable; and (3) whether the defendants are protected by qualified immunity.[2]

### A.

■ The first question is governed by *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). In that case, Baltimore police officers obtained and executed a warrant to search the person of one McWebb and "the premises known as 2036 Park Avenue third floor apartment" for controlled substances and related paraphernalia. While the police believed that there was only one apartment on the described premises, there were in fact two—one occupied by McWebb and the other occupied by Garrison. Before the officers became aware that they were actually in the Garrison's apartment, they discovered contraband. The question presented was whether the seizure of that contraband was prohibited by the Fourth Amendment.

The Court noted that the case posed two questions: first, whether the warrant was invalid because it did not reflect a completely accurate understanding of the building's floor plan; and second, whether the officers' execution of the warrant violated the Fourth Amendment. Only the second of these inquiries is applicable here inasmuch as there is no challenge to the validity of the search and seizure warrant.

In *Maryland v. Garrison,* the Supreme Court held that

[i]f the officers had known, or should have known, that the third floor apartment contained two apartments before they entered the living quarters on the third floor ... they would have been obligated to limit their search to McWebb's apartment. Moreover, as the officers recognized, they were required to discontinue the search of [Garrison's] apartment as soon as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that the might be in [the wrong apartment]. The officers' conduct and the limits of the search were based on the information available as the search proceeded. While the purposes of justifying a police search strictly limit the permissible extent of the search, the Court has also recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants.

480 U.S. at 86–87, 107 S.Ct. at 1017–18. The Court went on to define "honest mistakes" as "those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Id.,* 480 U.S. at 87 n. 11, 107 S.Ct. at 1018 (*quoting Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). Simply put, the question is whether the officers' mistake was "objectively understandable and reasonable." *Id.,* 480 U.S. at 88, 107 S.Ct. at 1018.

In light of this standard, the plaintiff's argument that the defendants' conduct was *per se* unreasonable because they did not possess a warrant for the plaintiff's apart-

---

**2.** Although only the state defendants have raised the issue of qualified immunity, the court determines that, if these defendants are protected by such immunity, so are the city defendants. *See* Part III.C., *infra.*

ment is without merit.[3] To reiterate, the question under controlling Supreme Court precedent is whether the mistake was objectively reasonable.

The plaintiff also contends that the defendants' operative assumption that they will meet violence whenever executing narcotics-related search warrant imposes upon them a duty to take reasonable precautions against entering the wrong premises. The plaintiff, however, has not pointed to any authority—and the court is unable to find any authority—to support this proposition as a constitutional principle. While the plaintiff's argument is certainly a creative one, the court is not prepared to make a blind leap in order to embrace such a novel contention—especially in an area of constitutional law which has been litigated so extensively.

The plaintiff next argues that *Maryland v. Garrison* is readily distinguished in that the warrant at issue here explicitly stated that "[t]he numbers 424 and 422 are on the front of the building, on either side of the entrance way." Given the particular facts which faced the defendants at the time of the warrant's execution, however, the court finds the plaintiff's argument unpersuasive. Put simply, the record clearly reveals that the defendants' mistake was indeed objectively reasonable.

The Affidavit of Eric Smith (dated Aug. 6, 1993) ("Smith Affidavit") (attached to the state defendants' Motion for Summary Judgment), at ¶ 10, establishes that the woman who received the package, later identified as Evelyn Dark, subsequently entered the apartment to the left from the front of the building—*i.e.*, the plaintiff's apartment. The plaintiff admits that Ms. Dark was inside the plaintiff's apartment when the officers commenced their search. *See* Transcript of Deposition of Plaintiff Kay Francis Samuels, May 26, 1993 ("Plaintiff's Deposition") (attached to the state defendants' Motion for Summary Judgment), at 26; Affidavit of Kay Samuels (dated Sept. 17, 1993) ("Plaintiff's Affidavit") (attached to the plaintiff's Docu-

ments Filed in Opposition to Defendants' Motion for Summary Judgment, filed Sept. 20, 1993), at ¶ 5. Ms. Dark actually lived in the apartment across the hall—*i.e.*, the apartment subject to the search and seizure warrant. *See* Smith Affidavit at ¶ 13; Plaintiff's Affidavit at ¶ 5.

Meanwhile, defendant Samuels, who supervised the back door team, testifies that the officers, upon entering the plaintiff's apartment, did in fact believe that the package of drugs had been delivered and that they should commence execution of the warrant, concentrating their attention on the right side of the building as they faced it from the rear—*i.e.*, the plaintiff's apartment. *See* Affidavit of Paul Samuels (dated Aug. 6, 1993) ("Samuels Affidavit") (attached to the state defendants' Motion for Summary Judgment), at ¶ 10; *see also* Affidavit of Craig Fournier (dated Aug. 6, 1993) ("Fournier Affidavit") (attached to the state defendants' Motion for Summary Judgment), at ¶ 5.

The affidavits of the state defendants further demonstrate that the officers on the back door team initially believed that they were entering a common hallway, and not an individual apartment. Samuels Affidavit at ¶ 11; Fournier Affidavit at ¶ 6; Affidavit of James Howard (dated Aug. 6, 1993) ("Howard Affidavit") (attached to the state defendants' Motion for Summary Judgment), at ¶ 7. Indeed, the rear door was unlocked and propped open. Samuels Affidavit at ¶ 11; Fournier Affidavit at ¶ 6. The plaintiff admits this. Plaintiff's Deposition at 12–13. The defendants' affidavits also establish that—once it became apparent that the officers were inside an apartment—they believed that they were in the correct apartment. Samuels Affidavit at ¶ 13; Fournier Affidavit at ¶ 6. Moreover, once they it became apparent that the officers were inside the wrong apartment, they terminated their search and quickly departed. Samuels Affidavit at ¶¶ 16, 17; Fournier Affidavit at ¶ 12; Howard Affidavit at ¶ 10; Smith Affidavit at

---

3. The plaintiff's reliance on *United States v. Zabare*, 871 F.2d 282 (2d Cir.), *cert. denied*, 493 U.S. 856, 110 S.Ct. 161, 107 L.Ed.2d 119 (1989), is misplaced. That case, unlike this one or *Mary-* *land v. Garrison*, did not involve a mistaken execution of a valid search warrant, but, rather, a search and seizure unaccompanied by any warrant whatsoever.

¶¶ 12; 13. The plaintiff admits this as well. Plaintiff's Deposition at 27.

In short, the defendants on the back door team entered the same apartment as did the suspect who accepted the package. Although defendant Samuels, who led the back door team, knew that the premises contained more than one apartment, he was not familiar with the interior layout of the building. Samuels Affidavit at ¶ 13. Meanwhile, the defendants on the front door team, who may have had a better understanding of which apartment was covered by the warrant, were initially locked out of the building and did not enter until members of the back door team opened the front door from the inside. Smith Affidavit at ¶¶ 9, 11.

The plaintiff, on the other hand, relies exclusively on the face of the warrant. Apart from the warrant, the plaintiff has not presented any evidence whatsoever to suggest that the defendants on the back door team knew or should have known that they were entering the wrong apartment or that they intended to enter the wrong apartment. The warrant, however, does not spell out with ample clarity the interior layout of the premises, especially from the rear of the building where the search was commenced. Put simply, the plaintiff has not produced sufficient specific facts to establish that there is a genuine issue of material fact for trial on this question. *See Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552.

In sum, under the circumstances presented here and in light of the information the officers possessed at the time they were executing the warrant, the court finds that the defendants' mistake was objectively understandable and reasonable. Given the proximity of the two apartments at issue; the fact that the defendants entered the building from the rear through an open door; the confusion stemming from the suspect Evelyn Dark's entry into the plaintiff's apartment after accepting the package of drugs; the absence of any evidence suggesting that the back door team knew or should have known

that they were entering the wrong apartment; and the recognized need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants, the court holds that the defendants' error in executing the warrant did not violate the Fourth Amendment.[4]

### B:

The second question is whether the defendants' conduct, once inside the plaintiff's apartment, was also objectively reasonable. Here, the governing standard is articulated by *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), where the Supreme Court rejected Judge Friendly's approach in *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Judge Friendly had posited that excessive force claims under 42 U.S.C. § 1983 turned, in part, on whether the officers acted in a good-faith effort to maintain or restore discipline or in a malicious and sadistic manner for the purpose of causing harm. 481 F.2d at 1033. In *Graham v. Connor,* 490 U.S. at 397, 109 S.Ct. at 1872, the Supreme Court stated that

[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Accordingly, the plaintiff is correct in stating that the defendants' honest intentions or motivations are irrelevant to the issue of excessive force.

In any event, the plaintiff's Affidavit, as well as her deposition testimony, simply do not raise facts sufficient to sustain an excessive force claim under the Fourth Amendment. The plaintiff states that the defendants used foul language, drew their weapons, and pointed a gun at her; that they damaged various items of personal property; and that the plaintiff's reputation and her

---

4. Accordingly, the court need not reach any asserted justification of the defendants' entry into the plaintiff's apartment based on a theory of "hot pursuit" and/or exigent circumstances.

This issue is irrelevant inasmuch as the defendants' conduct passes constitutional muster under *Maryland v. Garrison.*

relationship with her family were adversely affected by this incident. While all this certainly is regrettable, there is simply not enough on this record for the plaintiff to establish a constitutional violation. This is especially so in light of the Supreme Court's admonition that the reasonableness of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. at 396, 109 S.Ct. at 1871.

Indeed, the plaintiff admits that the rear door to her apartment was unlocked and propped open. Plaintiff's Deposition at 12–13. While the plaintiff asserts that the defendants "scared the hell out of [her]," she also admits that she was not in any way beaten, pushed, or even touched. *Id.* at 33. The bare allegations in her complaint that she was assaulted and battered with great force and violence therefore find no support whatsoever on this record. Finally, the plaintiff admits that when the officers discovered that they were in the wrong apartment, they stopped what they were doing and left. *Id.* at 27.

As noted previously, *see* Part III.A., *supra,* the officers were under the reasonable, albeit mistaken, impression that they were properly executing a narcotics-related search and seizure warrant. From their perspective at the scene, therefore, they were reasonably justified in drawing their weapons, securing entry, and preparing for potential violence or flight.

As it happens, the Fournier and Howard Affidavits state that the defendants actually limited their activities to an initial effort to secure the occupants and conduct a routine protective security sweep, and that they remained for only a brief period of time. These affidavits, as well as the Samuels Affidavit, represent that the defendants terminated their activities and quickly departed once they learned of their mistake.

To reiterate, the plaintiff's testimony does not materially controvert these assertions. Resolving all ambiguities in favor of the plaintiff, and drawing all inferences in the light most favorable to the plaintiff, the court concludes that there is no genuine issue of material fact regarding the question of whether the defendants' conduct, once inside the plaintiff's apartment, violated the Fourth Amendment.

Although courts have held that a defendant police officer need not actually touch or physically harm a person to have used excessive force, *see Black v. Stephens,* 662 F.2d 181 (3d Cir.1981), *cert. denied,* 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876, *reh'g denied,* 456 U.S. 950, 102 S.Ct. 2022, 72 L.Ed.2d 475 (1982), there is nothing on this record which even remotely suggests any similarity with that case. In *Black v. Stephens,* the plaintiff claimed that the defendant, a plainclothes police detective, pulled up to the plaintiff's vehicle, pointed a revolver at his head, and threatened to shoot. The defendant was not pursuing the plaintiff in connection with any law enforcement activities; nor was there any warrant or even probable cause for an arrest. Rather, it appears that the defendant simply used his authority as a police officer to gain an advantage in an argument.

Here, the plaintiff is unable to produce sufficient specific facts which suggest anything remotely resembling this level of objectively unreasonable behavior. In *Graham v. Connor,* the Supreme Court held that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." 490 U.S. at 396–97, 109 S.Ct. at 1872–73. To subject the defendants to further litigation on this record would be to ignore this mandate from the Court.

The plaintiff's reliance on *Tarpley v. Greene,* 684 F.2d 1 (D.C.Cir.1982), is similarly unavailing. There, the Court of Appeals reversed the district court's decision to grant the defendants' motion for summary judgment, based on the district court's exclusive reliance on the absence of any evidence of physical assault or battery. The Court stated that

> [t]he [d]istrict [c]ourt's decision to grant summary judgment to [the defendants] was based not on [the plaintiff's] failure to

present any evidence that the . . . search transgressed . . . general standards of reasonableness, but on [the plaintiff's] failure to present evidence of physical assault and battery.

*Id.* at 9. Here, the court explicitly bases its decision to grant the defendants' motion for summary judgment on the plaintiff's failure to present any evidence that the defendants' conduct transgressed general standards of reasonableness.

In sum, the court finds that the defendants' conduct, once inside the plaintiff's apartment, was objectively reasonable under the circumstances. Accordingly, the court concludes that no Fourth Amendment violation occurred.

### C.

The final question involves whether the defendants are protected by qualified immunity. While this issue has been arguably rendered moot by the court's resolution of the other issues in this case, the court nevertheless finds that in the circumstances presented here the defendants are protected by qualified immunity.

■ Generally, government officials performing discretionary functions are accorded qualified immunity and thereby shielded from civil damages liability insofar as they do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated," *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). In short, like the other issues posed by this action, qualified immunity is defined in terms of the "objective legal reasonableness of an official's acts." *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738.

■ Here, there can be no doubt that the officers reasonably believed that their conduct was fully consistent with the Fourth Amendment. The record demonstrates that the officers reasonably believed they were properly executing a narcotics-related search and seizure warrant and that they terminated their activities and departed the plaintiff's apartment once they realized their mistake. They did not physically abuse the plaintiff nor did they subject her to prolonged detention. On this record, it is difficult to imagine that a reasonable police officer would have any idea that he was violating a clearly established constitutional right.

The plaintiff's attempt to bring this case in line with *Golino v. City of New Haven,* 761 F.Supp. 962 (D.Conn.), *aff'd,* 950 F.2d 864 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992), is not persuasive. There, this court noted that "the alleged constitutional violation complained of by plaintiff involves a right that was clearly established and was not subject to an exception at the time of his arrest—that is, the right not to be arrested without probable cause." 761 F.Supp. at 971 (*citing Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987)). Here, by contrast, the plaintiff's right not to be subjected to the mistaken execution of an otherwise valid search warrant was by no means clearly established at the time of the search. *See Maryland v. Garrison, supra.*

Accordingly, the court holds that, under the circumstances presented here, the defendants are entitled to qualified immunity as a matter of law. They are therefore immune from civil damages liability.

### CONCLUSION

Based on the record, and for the reasons stated, the state defendants' Motion for Summary Judgment (filed Aug. 9, 1993) (doc. # 21) is hereby GRANTED.

It is so ordered.