**James DAWKINS, Individually and on Behalf of Their Minor Children; Jackie Dawkins, His Wife, Individually and on Behalf of Their Minor Children; LaQuestia Dawkins, Minor Child; Schenary Williams, Minor Child; Earnestine Jones, Appellees,**

v.

**Bobbie GRAHAM, Agent with the Tenth Judicial District Drug Task Force, In his Individual and Official Capacity; Dennis Roberts, A Police Officer of the AR State Police Dept., In his Individual and Official Capacity, Appellants.**

No. 94–2259.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1994.

Decided March 14, 1995.

Victra Fewell, Little Rock, AR, argued, for appellants.

David C. Schoen, Fayetteville, AR, argued (Ralph Washington, Little Rock, AR, on the brief), for appellee.

Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

FAGG, Circuit Judge.

Bobbie Graham and Dennis Roberts appeal the denial of their motion for summary judgment. In reviewing the denial, we view the record in the light most favorable to the nonmoving parties, James Dawkins and his family.

In the early evening of October 2, 1991, two masked men brandishing guns burst into the home of James and Jackie Dawkins. Jackie, her daughters LaQuestia and Schenary, and Jackie's mother, Earnestine Jones, were watching television in the living room. The masked men ordered the women and girls to get onto their knees. When Earnestine asked the men what they wanted, they repeated their demand and shoved the sixty-three-year-old woman down, bruising her knees. LaQuestia, who was ten years old at the time, ran from the room. One of the men chased her, caught her, and held a pistol to her head. Jackie's teenage son came out of his bedroom and the man pointed the pistol at him, threw him against the wall, and handcuffed him. Screams awoke Jackie's husband, James, who was sleeping in a bedroom. James ran down the hall towards the ruckus. As James entered the kitchen, one of the men forcefully knocked James down with his gun and handcuffed him, before James had any opportunity to attack or resist the man. In the process, James's face struck the floor and began to bleed. Jackie screamed, "Please don't kill my husband" and "Give them whatever they want." The masked men were not robbers, however, but were drug agents who erroneously entered the Dawkins home at 611 Adam Street while attempting to execute a search warrant for a crack house one block away at 611 Byrd Street. Because the men did not verbally identify themselves as police officers or wear any visible identification, the Dawkinses did not learn the two men were law enforcement officers until a third officer entered the Dawkins home and informed the other officers of their mistake.

The Dawkinses later brought this action against the two officers, Graham and Roberts, under 42 U.S.C. § 1983. The Dawkinses alleged the officers violated the Fourth Amendment by unlawfully entering their home, unlawfully arresting them, and using excessive force against them. The officers moved for summary judgment based on qualified immunity and the merits of the Dawkinses' claims. The district court denied the officers' motion. We affirm.

■■■ The officers first assert the district court should have granted summary judgment on the merits of the Dawkinses' claims. We can consider the merits in this interlocutory appeal from the denial of qualified immunity. *Moutray v. Butts,* 985 F.2d 426, 427 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 69, 126 L.Ed.2d 38 (1993).

Quoting dicta in *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the officers assert the Fourth Amendment is not violated "by the mistaken execution of a valid search warrant on the wrong premises." *Id.* at 396, 109 S.Ct. at 1871 (citing *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987)). *Graham* did not involve the mistaken execution of a warrant on the wrong premises, however. The Court in *Graham* held the Fourth Amendment's objective reasonableness standard governs a free citizen's claim that law enforcement officials used excessive force in seizing the citizen. *Id.* at 388, 109 S.Ct. at 1867. The Court made the isolated statement to which the officers refer in the context of explaining that the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene. *Id.* at 396, 109 S.Ct. at 1871.

*Garrison,* on the other hand, did involve the mistaken execution of a valid warrant on the wrong premises. *Garrison* makes clear that the Fourth Amendment's allowance for officers' honest mistakes is limited to mistakes that are objectively reasonable. 480 U.S. at 87 & n. 11, 107 S.Ct. at 1018 & n. 11. The officers in *Garrison* obtained a warrant to search a man named McWebb and the "third floor apartment" at a certain address. Unbeknownst to the officers, the named premises contained two apartments on the third floor, one rented by McWebb and one rented by Garrison. The officers searched Garrison's apartment based on the overly broad warrant description. In upholding the search of Garrison's apartment, the Supreme Court observed that if the officers knew or should have known before they entered Garrison's apartment that the warrant incorrectly included it, the officers could not have legally searched it. *Id.* at 86, 107 S.Ct. at 1017. The Court stated the validity of the search depended on the objective reasonableness of the officers' failure to realize the warrant's overbreadth. *Id.* at 88, 107 S.Ct. at 1018. Because the objective facts available to the officers at the time did not suggest a distinction between McWebb's apartment and the third floor, the officers' mistaken search of Garrison's apartment was objectively reasonable. *Id.* Thus, under *Garrison,* the execution of a valid warrant on the wrong premises violates the Fourth Amendment if the officers should know the premises searched are not the premises described in the warrant, i.e., the officers' mistake is not objectively reasonable. *Id.* at 86–88, 107 S.Ct. at 1017–18; *see Samuels v. Smith,* 839 F.Supp. 959, 963 (D.Conn.1993).

Here, a jury must decide whether the officers' mistake was objectively reasonable. The raid at 611 Byrd involved a large search team and the officers were extensively briefed. The plan was to wait until the suspect and his pink Camaro sports car, an object of the search in addition to the house, were both at 611 Byrd. After Graham and Roberts were told that the suspect and the pink Camaro were both at 611 Byrd, the two officers drove in one vehicle to execute the warrant. Street signs clearly marked both Adam and Byrd Streets. Officer Roberts had previously been to the house at 611 Byrd and was personally familiar with the route. Nevertheless, Graham and Roberts turned a block too soon onto Adam Street. The only vehicle at 611 Adam was a van, which was only partially pink, and the house was a different color than the one at 611 Byrd. Further, the rest of the search team was not present at 611 Adam. In short, objective facts available to the officers at the time of the raid distinguished the premises at 611

Adam from the premises at 611 Byrd. Although Graham and Roberts were in radio contact with the rest of the search team, they did not call to check the discrepancies. In these circumstances, a jury must decide whether the officers should have known they were entering the wrong house.

Next, the officers argue that even if their entry was unlawful, their actions in detaining and gaining control of the Dawkins family inside their home was objectively reasonable and thus did not violate the Fourth Amendment. *See Graham,* 490 U.S. at 397, 109 S.Ct. at 1872; *Ginter v. Stallcup,* 869 F.2d 384, 388 (8th Cir.1989); *Samuels,* 839 F.Supp. at 965. As we have already explained, the objective reasonableness of the officers' mere presence in the Dawkins house is in question. In addition, the officers and the Dawkinses gave conflicting accounts of their actions inside the Dawkins home. Thus, there is a genuine issue of material fact about the reasonableness of the officers' conduct in the Dawkins house. *Kelly v. Bender,* 23 F.3d 1328, 1331 (8th Cir.1994).

■ The officers also contend they are entitled to summary judgment on the excessive force claim because the Dawkinses did not suffer significant injuries. Although the Fifth Circuit had adopted a "significant injury" requirement for Fourth Amendment excessive force claims, the Fifth Circuit abandoned the requirement after the Supreme Court eliminated the significant injury requirement for Eighth Amendment excessive force claims in *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). *See Harper v. Harris County, Tex.,* 21 F.3d 597, 600 (5th Cir.1994). We have not decided whether a plaintiff bringing a Fourth Amendment excessive force claim must suffer some minimum level of injury. In the Eighth Amendment context, we require an excessive force plaintiff to suffer "actual injury," which, consistent with *Hudson,* is less than "significant injury." *Cummings v. Malone,* 995 F.2d 817, 822–23 (8th Cir.1993). Assuming without deciding that the Dawkinses must have suffered some minimum level of injury to proceed with their Fourth Amendment excessive force claim, we conclude the necessary level of injury is actu-

al injury. The Dawkinses have satisfied the actual injury standard. James sustained bruises and a facial laceration and was taken to the hospital in an ambulance. Earnestine's knees were bruised and her blood pressure became elevated. And LaQuestia suffers from posttraumatic stress disorder.

■ Finally, the officers assert that even if they are not entitled to summary judgment on the merits, they are entitled to qualified immunity. Qualified immunity does not shield the officers from a lawsuit for damages if a reasonable officer would have known the officers' actions violated clearly established law. *Hummel–Jones v. Strope,* 25 F.3d 647, 652 (8th Cir.1994); *see Hunter v. Bryant,* 502 U.S. 224, 226–28, 112 S.Ct. 534, 536–37, 116 L.Ed.2d 589 (1991) (per curiam). In other words, qualified immunity does not protect plain incompetence. *Hummel–Jones,* 25 F.3d at 652; *see Hunter,* 502 U.S. at 228, 112 S.Ct. at 537.

We conclude the officers are not entitled to qualified immunity. First, the law prohibiting the officers' conduct was clearly established at the time of the raid. This case involves the fundamental and long-established Fourth Amendment rights to retreat into one's own home and to be free from unreasonable governmental intrusion there. *See Silverman v. United States,* 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961); *Bergquist v. County of Cochise,* 806 F.2d 1364, 1368 (9th Cir.1986). The more specific right not to be subjected to the unreasonable mistaken execution of a valid search warrant was also clearly established at the time of the search in this case. *See Garrison,* 480 U.S. at 86–89, 107 S.Ct. at 1017–19. Second, there is a material question of fact about whether the officers' entry of the Dawkins home was a mistake amounting to plain incompetence. *See Castro v. United States,* 34 F.3d 106, 113 (2d Cir.1994).

We affirm the district court's denial of summary judgment to the officers and remand for further proceedings consistent with this opinion.