HEANEY, Circuit Judge.
Lonnie Namanny appeals the district court’s denial of his motion for summary judgment on qualified immunity grounds. We affirm in part and reverse in part.
I. Background
On June 20, 1996, an anonymous caller contacted the Department of Housing Services for the City of Des Moines, Iowa, complaining of drug activity at the residence of Charmaine Hunter. The caller reported “lots of traffic coming and staying for short periods at a time. This goes on every day of the week at all times of the day. Traffic really picks up at 6:00 p.m. to 10:00 p.m.” On the basis of the complaint, Namanny and another police officer were assigned to conduct surveillance of Hunter’s residence. On July 1, the officers conducted surveillance of Hunter’s home from 8:00 p.m. to midnight, and observed only two vehicles registered to Hunter parked outside.
Namanny and another officer conducted additional surveillance on July 2 between 9:00 p.m. and 4:00 a.m. At approximately 11:00 p.m., a vehicle pulled into Hunter’s driveway, and the driver entered Hunter’s residence. After “a couple minutes,” the driver left Hunter’s home. As the vehicle passed, Namanny observed that the driver was not wearing a seatbelt. Namanny requested a check on the vehicle’s license plates, and learned that the vehicle was registered to Carla F. Davis, and that Davis’ driver’s license was expired. Na-manny requested assistance, and he and other officers stopped the car. Davis was driving the car; a search of the vehicle turned up crack cocaine. Davis was not charged with any criminal offense despite the discovery of crack.
Namanny then prepared an affidavit in support of a warrant for a search of Hunter’s home. In relevant part, the affidavit stated:
[A] formal complaint concerning narcotic activity was received through Des Moines Police Vice/Narcotics Control Section on 20 JUNE 96 .... The complaint described heavy, short-term traffic to and from the residence. This traffic is consistent with traffic to and from a house involved in the sale of illegal drugs based on my experience and training.
Surveillance was then conducted ... between the hours of 2100 hours to approximately 2300 hours, at which time a small silver vehicle was observed .... Shortly after observing the vehicle at the address, officers then observed the vehicle pull away from the address .... A traffic stop was conducted ... on the small silver vehicle. Driver of vehicle was Carla Faye Davis .... Davis was asked to step out of her vehicle after officers observed her digging down by the driver’s door upon approaching her vehicle. During search incident to arrest on Davis, a small bag of crack cocaine was found in her purse ....
Davis was asked if she wanted to cooperate with our investigation by providing information regarding where the crack in her purse was obtained. Davis stated she had just purchased the crack ... from a Charmine [sic] Hunter for $50.00. Davis stated she has bought crack from Hunter approximately three to four times at the same address .... Davis’ description of the house from where she bought the crack cocaine matches [Hunter’s] house.
Based on my training and experience, the information provided is consistent with drug dealing and individuals who deal on this level are known to keep other tools of their trade at their place of residence. Some of the tools include additional drugs, scales, money, drug notes and weapons.
(App. at 47-48.)
Namanny’s affidavit was presented to a judge, and a warrant was issued. At ap *828 proximately 2:00 a.m. on July 3, the warrant was executed. Namanny and other officers knocked and announced their presence; they received no response and used a battering ram to enter. Upon entering, the officers drew their weapons and identified themselves as Des Moines narcotics officers. Hunter had been asleep on the couch in her underclothes, and asked to be allowed to put on some more clothing. The officers initially refused, but then permitted Hunter to dress herself. Hunter also asked to be allowed to use the toilet, explaining that she was disabled and taking medication that caused her to urinate frequently. The officers refused Hunter’s repeated requests until she urinated and defecated on herself. At the time the officers entered Hunter’s house, Hunter’s fifteen-year-old son Charles Franks was in bed in his second-floor bedroom. Franks was handcuffed at gunpoint and led downstairs while his room was searched. No evidence of criminal conduct was found at Hunter’s home, and the officers left the residence at approximately 3:30 a.m.
Hunter filed suit against Namanny in Iowa state court, claiming that Namanny’s actions violated her and Franks’ Fourth Amendment and Due Process rights, and constituted an excessive use of force and various torts under Iowa law. After Na-manny removed the action to the district court in July 1997, Davis was deposed. At her deposition, Davis contradicted portions of the warrant affidavit. Specifically, Davis denied telling the officers who questioned her that she had purchased cocaine from Hunter. Instead, Davis testified that she told the officers that between the time she left Hunter’s house and when she was pulled over, she had stopped at a local convenience store where an individual whom she could identify only as Charles gave her the cocaine.
Namanny moved for summary judgment on qualified immunity grounds, contending that even if the warrant affidavit were reconstructed to exclude allegedly false information and include critical information allegedly omitted with the intention to mislead, it would still support probable cause. Namanny also argued that Davis’ statements should not be included in a reconstructed affidavit. He maintained that the inclusion of omitted information supplied by one who, like Davis, also provides the basis for the plaintiffs claim that the affidavit included false information would give undue weight to that person’s account. Namanny argued that a plaintiff could easily defeat probable cause and avoid summary judgment merely by convincing a witness to recant. Namanny further argued that he was entitled to summary judgment on any constitutional claim arising out of his denial of Hunter’s request to use the toilet, as no clearly-established constitutional law required him to grant such a request. Namanny contended that Hunter’s excessive-force claim failed because his actions in executing the search warrant were reasonable as a matter of law. Finally, Namanny argued that he was entitled to summary judgment on Hunter’s state-law claims.
After hearing argument, the district court delivered an oral ruling denying Na-manny’s summary judgment motion. Addressing Hunter’s Fourth Amendment claim, the court rejected Namanny’s argument concerning the addition of alleged omissions and reconstructed the affidavit consistent with our decisions in United States v. Reivich, 793 F.2d 957, 961 (8th Cir.1986) and United States v. Dennis, 625 F.2d 782, 791 (8th Cir.1980), by removing from the affidavit allegedly false statements and including omissions allegedly made with the intent to mislead. The affidavit so reconstructed omitted Naman-ny’s account of his encounter with Davis and substituted Davis’ account. The reconstructed affidavit also recounted that surveillance of Hunter’s home on July 1 from 8:00 p.m. to midnight detected no traffic to or from the home except two vehicles registered to Hunter, and that Davis was not charged with any criminal *829 offense as a result of the discovery of crack in her possession.
The court determined that although the anonymous complaint regarding drug activity at Hunter’s residence might have provoked a reasonable suspicion, no reasonable officer or magistrate would have issued a warrant based on the facts recited in the reconstructed affidavit. Although the question of qualified immunity for Hunter’s remaining constitutional claims was raised in the parties’ arguments, the court did not specifically address those arguments in its ruling denying Naman-ny’s motion. Namanny appeals, renewing his argument that Davis’ account of events should not form the basis for both an omission from and an addition to the reconstructed affidavit. Namanny also contends the district court erred in denying him qualified immunity with respect to Hunter’s remaining constitutional claims.
II. Discussion
The district court’s denial of Namanny’s motion for summary judgment on qualified immunity is an immediately appealable final order because it turns on a legal determination whether certain facts show a violation of clearly established law. See Behrens v. Pelletier, 516 U.S. 299, 806, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); Pendleton v. St. Louis County, 178 F.3d 1007, 1010 (8th Cir.1999). Our review is de novo. See Collins v. Bellinghausen, 153 F.3d 591, 595 (8th Cir.1998).
Qualified immunity shields Namanny from personal liability if his actions, though unlawful, were “nevertheless objectively reasonable in light of the clearly established law at the time of the events in question.” Rogers v. Carter, 133 F.3d 1114, 1119 (8th Cir.1998) (citing Anderson v. Creighton, 483 U.S. 635, 638-39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). We analyze Namanny’s claim of qualified immunity using a three-part inquiry: (1) whether Hunter has asserted a violation of a constitutional or statutory right; (2) if so, whether that right was clearly established at the time of the violation; and (3) whether, viewing the facts in the light most favorable to Hunter, there are genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right. See Yowell v. Combs, 89 F.3d 542, 544 (8th Cir.1996).
In analyzing whether Hunter has asserted a constitutional violation, we examine both the evidence presented and the allegations of Hunter’s complaint.[1] See Walden v. Carmack, 156 F.3d 861, 869 (8th Cir.1998). We believe the facts alleged by Hunter, if true, describe a violation of her Fourth Amendment rights. See Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (warrant based upon affidavit containing “deliberate falsehood” or reflecting “reckless disregard for the truth” violates Fourth Amendment). However, Namanny is nevertheless entitled to qualified immunity if the warrant affidavit, as reconstructed according to Franks, would still provide probable cause to arrest or search. See Bagby v. Brondhaver, 98 F.3d 1096, 1099 (8th Cir.1996).
We believe a properly reconstructed affidavit would not have provided probable cause to search Hunter’s home. In this regard, we believe the affidavit was properly reconstructed by the district court. As appellant concedes, under Franks, the reconstructed affidavit must omit Namanny’s account of his encounter *830 with Davis. See Franks, 438 U.S. at 171, 98 S.Ct. 2674. Further, a reconstructed affidavit must also include material allegedly omitted with reckless disregard for the truth. See United States v. Gladney, 48 F.3d 309, 313-14 (8th Cir.1995); United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir.1993); United States v. Flagg, 919 F.2d 499, 501 (8th Cir.1990); United States v. Lueth, 807 F.2d 719, 726 (8th Cir.1986); Reivich, 793 F.2d at 960-61; Dennis, 625 F.2d at 791. Where, as here, the allegedly omitted information would have been clearly critical to the probable cause determination, recklessness may be inferred. See Reivich, 793 F.2d at 961. Thus, the district court properly included in the reconstructed affidavit Davis’ version of her encounter with Namanny, as well as the fact that Namanny’s four-hour stakeout on July 1 was fruitless.
We decline Namanny’s suggestion to modify Reivich such that Davis’ version of events would not be considered. To do so would skirt Franks ’ insistence that a probable cause determination be made on information that is truthful:
When the Fourth Amendment demands a factual showing sufficient to comprise “probable cause,” the obvious assumption is that there will be a truthful showing. This does not mean “truthful” in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant’s own knowledge that sometimes must be garnered hastily. But surely it is to be “truthful” in the sense that the information put forth is believed or appropriately accepted by the affiant as true.
Franks, 438 U.S. at 164-65, 98 S.Ct. 2674 (internal quotation omitted). Where a plaintiff has made a sufficient showing that the warrant affidavit omitted information critical to the probable cause determination, truthfulness requires that that information be included in the reconstructed affidavit. This principle applies a fortiori where, as here, the allegedly omitted information runs nearly perpendicular to the information supplied in the warrant affidavit. We note that public officials like Na-manny are protected from spurious § 1983 lawsuits based on warrant affidavits by Franks ’ requirement of a “substantial preliminary showing”; challenges to warrant affidavits may not be conclusory, and must be accompanied by adequate evidentiary support. See Franks, 438 U.S. at 170-71, 98 S.Ct. 2674; United States v. McNeil, 184 F.3d 770, 775-76 (8th Cir.1999); United States v. Wajda, 810 F.2d 754, 759 (8th Cir.1987) (noting substantiality requirement “is not lightly met”).
We do agree, however, with Namanny’s contention that the district court should not have included in the reconstructed affidavit the fact that Davis had not been charged with any criminal offense. In so doing, the district court confused the mandate of Franks with the disclosure requirements of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Simply put, that Davis was not charged with a crime is not critical to a probable cause determination, and therefore supports no inference of recklessness with the truth. Cf. Reivich, 793 F.2d at 962-63 (holding that promises of leniency to witnesses did not rise to level of omissions made with reckless disregard for truth).
That said, we have no difficulty concluding that a warrant affidavit properly reconstructed from facts viewed in the light most favorable to Hunter would have been insufficient to establish probable cause. Probable cause for a warrant exists only when the totality of the circumstances provides sufficient facts to lead a prudent person to believe there is a fair probability that contraband or other evidence of a crime will be found. See Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Here, two nights of surveillance failed to corroborate the only factual claim made by the anony *831 mous tipster: heavy, short-term traffic every day of the week and at all hours. Cf. United States v. Gibson, 928 F.2d 250, 253 (8th Cir.1991) (holding no probable cause to issue warrant where anonymous tip was corroborated only with respect to innocuous details). And although Namanny’s suspicions might certainly have been aroused by the odd explanation Davis said she gave as to how she obtained the crack found in her possession, such bare suspicion falls short of giving corroboration to the anonymous tip to support the issuance of a warrant.
Because it is clearly established that the Fourth Amendment requires a warrant application to contain a truthful factual showing of probable cause, see Mueller v. Tinkham, 162 F.3d 999, 1003 (8th Cir.1998), we next consider the objective reasonableness of Namanny’s actions, i.e., whether there are genuine issues of material fact as to whether a reasonable official would have known that Namanny’s actions violated that requirement, see Yowett, 89 F.3d at 544. Namanny points to the discovery of cocaine in Davis’ possession to support his contention that the existence of probable cause was at least arguable. Namanny also notes that even if Davis’ account were true he would not have been required to believe that she was given the crack in a convenience store. We acknowledge that probable cause determinations are not a matter of “library analysis by scholars.” Gates, 462 U.S. at 232, 103 S.Ct. 2317 (quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). However, given the genuine factual disputes that remain, a jury must decide whether Namanny’s actions were objectively reasonable. Viewing the facts in the light most favorable to Hunter, the nexus between Hunter’s house and the cocaine discovered in Davis’ possession was tenuous at best, and Namanny was not entitled to summary judgment.
Namanny asks that we consider whether he was entitled to qualified immunity with respect to Hunter’s remaining constitutional claims, despite the district court’s failure to explicitly do so. “Where the record on appeal is sufficiently clear, remand is not required for the resolution of issues not addressed by the district court.” Holloway v. Conger, 896 F.2d 1131, 1137 (8th Cir.1990); see also Collins v. Bellinghausen, 153 F.3d 591, 595 (8th Cir.1998). We believe the record here is sufficiently clear to permit us to resolve those issues.
In his summary judgment motion, Namanny argued he was entitled to qualified immunity with respect to Hunter’s other constitutional claims, including any claimed violation of rights resulting from his denial of Hunter’s request to use the toilet. We agree. We find no authority for the existence of a right on the part of one who is lawfully detained pursuant to the execution of a search warrant, see Michigan v. Summers, 452 U.S. 692, 704-05, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), to use a toilet upon demand. Although Hunter’s dignity was certainly compromised by what transpired as the search was conducted, we are unable to conclude that the Constitution requires that police engaged in a search for drugs allow a resident of the subject property access to a ready means of disposal of such contraband. Cf. Heitschmidt v. City of Houston, 161 F.3d 834, 838-39 (5th Cir.1998) (holding detainee stated claim for unlawful detention where detainee was handcuffed in street and held without access to toilet for four hours during evidentiary search, and detainee was not suspect in underlying criminal investigation).
Finally, we believe the facts alleged by Hunter do not rise to the level of an excessive use of force. It remains an open question in this circuit whether an excessive force claim requires some minimum level of injury. See Lambert v. City of Dumas, 187 F.3d 931, 936 (8th Cir.1999); Dawkins v. Graham, 50 F.3d 532, 535 (8th Cir.1995). Regardless of whether Hunter’s claims of emotional and mental injuries are sufficient to support an exces *832 sive-force claim, such injuries appear unrelated to the quantum of force used in the execution of the warrant, but rather to the fact that the warrant was issued and executed at all. Hunter’s only allegation of force is that Franks was handcuffed and led downstairs. This de minimis use of force is insufficient to support a finding of a constitutional violation. See Curd v. City Court, 141 F.3d 839, 841 (8th Cir.1998), cert. denied, 525 U.S. 888, 119 S.Ct. 204, 142 L.Ed.2d 167 (1998).
III. Conclusion
For the forgoing reasons, we affirm the district court’s denial of summary judgment on Hunter’s claims concerning the warrant affidavit, and remand for entry of judgment in favor of Namanny on Hunter’s remaining constitutional claims.

. The scope of this inquiry underscores the limits of our jurisdiction in interlocutory appeals from the denial of summary judgment on qualified immunity grounds. In an appeal of this nature, we lack jurisdiction to consider whether Hunter’s evidence would support a finding that the alleged conduct occurred. See Behrens v. Pelletier, 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). Hence, we are not "free to conclude that no reasonable jury could return a verdict for Hunter,” as the dissent contends. Post at 834. Moreover, the dissent’s dismissal of Davis’s testimony as "palpably incredible,” post at 835, appears to be the very sort of appellate fact-finding that it decries.