Rick CORTEZ and Tina Cortez,
Plaintiffs–Appellees,

v.

John McCAULEY, James Gonzales,
Curtis Sanchez, Shureke Covington,
and Joe Bowdich in their individual
capacities, the Board of Commission-
ers of the County of Bernalillo, New
Mexico, Defendants-appellants.

and

Raquel Villegas, Defendant.

No. 04–2062.

United States Court of Appeals,
Tenth Circuit.

Feb. 10, 2006.

982

---

Mary Y.C. Han (Paul J. Kennedy with her on the brief), of Kennedy & Han, P.C., Albuquerque, NM, for Plaintiffs–Appellees.

William D. Slease (Jonlyn M. Martinez with him on the brief), of Slease & Martinez, P.A., Albuquerque, NM, for Defendants–Appellants.

Before EBEL and HENRY, Circuit Judges, and WHITE, District Judge.*

WHITE, District Judge.

█ The Defendants–Appellants appeal from the district court's denial of their motion for partial summary judgment based on qualified immunity. "A district court's denial of a motion for summary judgment on qualified immunity grounds is an appealable decision under 28 U.S.C.

§ 1291." *Bisbee v. Bey,* 39 F.3d 1096, 1099 (10th Cir.1994).

The Plaintiffs–Appellees commenced this action, alleging claims pursuant to 42 U.S.C. § 1983 as well as state law claims under New Mexico law, seeking damages from employees of the Bernalillo County Sheriff's Department and the Board of County Commissioners of Bernalillo, New Mexico ("Board"). The Plaintiffs alleged, inter alia, that the Defendants (1) unlawfully arrested and interrogated the Plaintiffs; (2) used excessive force on the Plaintiffs; and (3) unreasonably searched the Plaintiffs' home, all in violation of the Plaintiffs' Fourth Amendment rights. The district court denied the Defendants' motion for partial summary judgment as to Defendants McCauley, Gonzales, Sanchez, and Covington. Furthermore, with respect to the other County Defendants, Bowdich and the Board, the court concluded that the Plaintiffs had made a meritorious showing under Fed.R.Civ.P. 56(f). Consequently, these Defendants' motions for partial summary judgment were denied without prejudice pending further discovery. For the following reasons, we affirm in part and reverse in part.

### Background

On May 26, 2001, at 12:24 a.m., the Bernalillo County Sheriff's Department received a telephone call from a nurse at Saint Joseph's Hospital alerting them that a mother, Raquel Villegas ("Ms.Villegas"), had brought her two-year-old girl to the hospital alleging that the child had complained that the "boyfriend" of her babysitter[1] had "hurt her pee pee." In response to this allegation, the Defendants McCauley, Gonzales, Sanchez, and Coving-

---

* The Honorable Ronald A. White, United States District Judge for the Eastern District of Oklahoma, sitting by designation.

1. Plaintiff Rick Cortez was actually the husband of the babysitter Tina Cortez.

ton were dispatched to Plaintiffs' residence. The officers did not wait to receive the results of the medical examination of the child, did not interview the mother of the child, and did not attempt to obtain a warrant.

At approximately 1:00 a.m. the deputies made contact with the Plaintiffs. Rick Cortez was asleep when he was suddenly awakened by noises and lights in his back yard. He heard a knock on the front door. Wearing only a pair of shorts, Rick Cortez opened the front door, and saw two police officers through the closed screen door. They ordered him to exit his home. As he opened the screen door and began to leave the house the officers seized him, handcuffed him, read him his Miranda[2] rights, and placed him in the back of a patrol car where he was subjected to questioning.

Tina Cortez was awakened by her husband as he got out of bed. Shortly after Rick Cortez left the bedroom, she followed him. She reached the front door just in time to watch the Defendants handcuff her husband and place him in the back of the patrol car. Tina Cortez headed toward the bedroom in order to make a telephone call, but before she could complete the call Defendant McCauley entered the home and seized Tina Cortez by the arm and physically escorted her from her home. The officer placed her in a separate patrol car where she was subjected to questioning. Defendant McCauley did allow Tina Cortez to use his cell phone. At this time the Defendants performed a warrantless search of the home, purportedly to find additional children that might be present and to eliminate the possibility of any un-

known threat to officer safety that may have been present.

During the subsequent interrogations of the Plaintiffs, the Defendants learned that Tina Cortez managed a small day care facility in which she took care of several children during the day. The Defendants further learned that Ms. Villegas engaged in a verbal altercation with the Plaintiffs after the Plaintiffs informed her that they would no longer take care of her child. Additionally, while providing his statement, Rick Cortez also informed the officers that the handcuffs were too tight and caused excessive pain. Despite his declaration and the fact that Rick Cortez supposedly was not under arrest, the officers never loosened the handcuffs.

As these events unfolded at the Cortez's residence, Officer Zuniga and Detective Foster made contact with Ms. Villegas at the hospital. Ms. Villegas provided an unsworn written statement in which she described the events that lead to her accusation. She also recounted a verbal dispute she had with the Plaintiffs. Additionally, Detective Foster was informed by the nurse who conducted the examination that "no evidence of penile penetration was present." Further, the nurse identified two potential sources of the child's vaginal irritation.[3]

Because the hospital did not find any evidence of molestation, the Plaintiffs were released from detention and permitted to reenter their home. The dispatch report for the incident indicated that they were released sometime between 1:49 a.m. and 2:16 a.m. on May 26, 2001. Rick Cortez was never charged with a crime associated with the allegations of Ms. Villegas.[4]

---

**2.** Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** The nurse noted that the child had "urine stained underwear on, which could irritate

her vagina." The nurse also noted bubble bath as a potential irritant.

**4.** The Defendants state in their appellate brief that Rick Cortez "may" have violated the child digitally. The Defendants point to no

Based on this early morning encounter with law enforcement officers the Plaintiffs filed suit. Appellants McCauley, Gonzales, Sanchez, Covington, and Bowdich moved for summary judgment on grounds of qualified immunity as to the federal civil-rights claim against them in their individual capacity. Defendants McCauley, Gonzales, Sanchez and Covington asserted they did not commit an unreasonable search and seizure as to either Plaintiff, and that excessive force was not used as to either Plaintiff. Defendant Bowdich argued he could not be held liable in his supervisory capacity. Shortly after the filing of the motion, the Defendants above joined with the Board of County Commissioners ("Board") and moved to have discovery stayed pending the outcome of their motion for summary judgment on the issue of qualified immunity. On March 17, 2004, the district court denied the Defendants' motion for summary judgment based on qualified immunity. This appeal followed.

### Standard of Review

■■■ "Because of the underlying purposes of qualified immunity, we review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir.2001). When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must first establish that the defendant violated a constitutional right. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir.2004). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If, on the other hand, a violation has been shown, the next step in the

qualified immunity sequence is to ask whether the constitutional right was clearly established. *Id.* "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition...." *Id.* "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." *Id.* at 202, 121 S.Ct. 2151. Summary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct would be clearly unlawful. *Id.* (*citing Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). If the plaintiff successfully establishes both a violation of a constitutional right and that the right was clearly established at the time of the alleged conduct, the burden shifts to the defendant, who must prove that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir.2002).

■■■ The district court's denial of qualified immunity is a question of law which we review de novo. *Bisbee v. Bey*, 39 F.3d 1096, 1099 (10th Cir.1994). We review the evidence in the light most favorable to the nonmoving party. *Id.* at 1100. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

### Analysis

The district court held that both Plaintiffs were subjected to arrest and search,

evidence in the record to support this assertion.

and that genuine issues of material fact existed as to the existence of probable cause. We believe our discussion will be clearer if each Plaintiff is discussed separately, along with the actions taken as to that Plaintiff.

## I. Plaintiffs' Fourth Amendment Claim Against Unreasonable Seizure

### A. Legal Framework

■ In *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir.2000), we stated "[t]he Supreme Court has identified three types of police/citizen encounters: consensual encounters, investigative stops, and arrests." [5] Consensual encounters are not seizures within the meaning of the Fourth Amendment, and need not be supported by suspicion of criminal wrongdoing. *Id.*

■ An investigative detention is a seizure within the meaning of the Fourth Amendment, but unlike an arrest, it need not be supported by probable cause. *Id.* The police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause. *Id.* For an officer to have reasonable suspicion to seize an individual the officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.*

■ An arrest occurs when an officer "has probable cause to believe that a person committed a crime." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir.1995).

An arrest is distinguished by the involuntary, "highly intrusive" nature of the encounter. *Oliver*, 209 F.3d at 1186. "[T]he use of firearms, handcuffs, and other forceful techniques" generally exceed the scope of an investigative detention and enter the realm of an arrest. *See United States v. Melendez–Garcia*, 28 F.3d 1046, 1052 (10th Cir.1994). "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir.2004)(internal quotation marks omitted).

### B. Seizure of Rick Cortez

■ Viewing the record in the light most favorable to Plaintiff Rick Cortez, we have no difficulty in finding that he has presented facts or allegations showing the Defendants violated a constitutional right, namely the Fourth Amendment right to be free of unreasonable seizure. *Olsen*, 312 F.3d at 1312. It appears that the officers: (1) grabbed Rick Cortez and pulled him from the doorway of his home; (2) handcuffed him; (3) advised him of his *Miranda* rights; (4) placed him in the back seat of the locked squad car; and (5) questioned him while he was in the back seat of the locked squad car. We also note that the encounter took place after midnight.[6] Based on the facts above, a jury could find that Rick Cortez was arrested without probable cause.[7]

---

5. These categories are not static, and may escalate from one to another. *See United States v. Shareef*, 100 F.3d 1491, 1500 (10rth Cir.1996).

6. *See Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)(holding that

reasonableness depends on when the seizure is made).

7. When the officers seized Rick Cortez, one of the officers apparently told Rick Cortez that he was not being arrested. Therefore, the officers may have believed that they were not effecting an arrest, but rather an investigative

Under the second sequential question[8], we also find the right was clearly established when the alleged violation occurred. The law was and is unambiguous: a government official must have probable cause to arrest an individual. Furthermore, it was established law that "the probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention." *Romero*, 45 F.3d at 1476–77 (footnote omitted). In the present case, witnesses were readily available for interviews, physical evidence was available, and a medical diagnosis was forthcoming. Defendants, however, did not: (1) interview the mother, the nurse, or the doctor; (2) inspect the youngster's clothing for possible signs of sexual assault; or (3) wait for a preliminary report from the doctor. In other words, Defendants conducted no investigation. Instead, the Defendants relied on the flimsiest of information.

Defendants rely upon the statement of the two-year-old child which was relayed to them by a nurse, who heard it from the girl's mother. The fact that hearsay evidence would not be admissible at trial to prove guilt does not make it unusable as a source of probable cause for a warrantless arrest. *See United States v. Swingler*, 758 F.2d 477, 487 (10th Cir. 1985). Defendants have cited the "excited utterance" exception to the hearsay rule

contained in Rule 803(2) F.R.Evid. Arguably, the statement might also fall within the "medical diagnosis" exception of Rule 803(4) F.R.Evid., but the Court sees no need to engage in such analysis. The statement is not being presented for the truth of the matter asserted therein; the issue is whether the officers were justified in relying upon it.

In *Easton v. City of Boulder*, 776 F.2d 1441 (10th Cir.1985), we declined to discount the testimony of a three-year-old and a five-year-old regarding child abuse based solely on their age. *Id.* at 1449. We specifically found, however, that the five-year-old's statement had "corroborated all the facts given by [the three-year-old] ... with respect to the assault [the five-year-old] witnessed." *Id.* at 1443. Here, no such corroboration was present. Additionally in *Easton*, we found that details in both children's statements regarding the plaintiff's residence and the site of the assault were independently corroborated by police investigation. *Id.* at 1450. Again, no such corroboration was present. Therefore, we find that the Plaintiff has demonstrated a claim that his constitutional right to be free from unreasonable seizures has been violated.

This conclusion does not, however, end our analysis. Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity. *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir.1995)[9]. Therefore, when a warrantless arrest or a seizure is the subject of a

---

detention. The officers' subjective beliefs are irrelevant. *See United States v. Charley*, 396 F.3d 1074, 1080 (9th Cir.2005). *See also Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)(same principle as to excessive force).

8. "Order is important; we must decide first whether the plaintiff has alleged a constitu-

tional violation, and only then do we proceed to determine whether the law was clearly established." *Maestas v. Lujan*, 351 F.3d 1001, 1007 (10th Cir.2003).

9. Some courts have referred to this standard as "arguable probable cause". *See, e.g., Jones v. Cannon*, 174 F.3d 1271, 1283 n. 3 (11th Cir.1999).

§ 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff.

■ This principle may appear to be in some tension with the equally established principle that "it is a jury question in a civil rights suit whether an officer had probable cause to arrest." *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir.1990), *cert. denied*, 502 U.S. 814, 112 S.Ct. 65, 116 L.Ed.2d 41 (1991). The tension is resolved in this case by the essential lack of dispute over the historical, predicate facts. The parties agree on the "what happened" questions.[10] In such a circumstance, for qualified immunity purposes there is no such thing as a "genuine issue of fact" as to whether an officer "should have known" that his conduct violated constitutional rights. *See Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir.2000).[11] We find the officers did not have "arguable probable cause" to arrest Rick Cortez because, as mentioned above, the information relied on to conduct the seizure was not reasonably trustworthy information sufficient on its own to justify the seizure.

### C. Seizure of Tina Cortez

■ We now turn to the treatment of Tina Cortez. Taking the Plaintiffs' allegations as true, and viewing the evidence in the light most favorable to the Plaintiffs, it appears that Tina Cortez (1) was ordered out of her house by the officers; (2) returned to her bedroom (though it is unclear whether she did so after exiting the house in response to the officers' orders, or without exiting the house); (3) was physically separated from her telephone by an officer illuminating the bedroom with a flashlight; (4) was taken by the arm by the officer and escorted from her home; (5) was placed in the back seat of a locked squad car; and (6) was questioned by an officer while in the back seat of the locked squad car. While in the back seat of the locked squad car, Tina Cortez was allowed to use an officer's cell phone. Again we note that all this occurred after midnight.

■ The seizure of Tina Cortez was less intrusive than that of Rick Cortez to be sure. She was not advised of her *Miranda* rights, was not handcuffed, was allowed to use the officer's cell phone, generally seemed to be subjected to less force than Rick Cortez, and did not seem to be the object of the officers' primary suspicions. Again, whether the seizure of Tina Cortez should be characterized as an arrest or an investigative detention is a question for the jury. Although we make no determination as to the characterization of Tina Cortez's detention, we presently assume for the sake of argument that she was subjected to an investigative detention. *Cf. Muehler v. Mena*, 544 U.S. 93, 125 S.Ct. 1465, 1470–71, 161 L.Ed.2d 299 (2005)(making clear that detaining individuals under intrusive conditions does not automatically convert the detention to an arrest).

■ Therefore, assuming the seizure of Tina Cortez was an investigative detention, we again examine the officers' factual basis. As previously stated, an in-

---

**10.** A phrase used in *Smith v. Lamz*, 321 F.3d 680, 684 (7th Cir.2003).

**11.** Of course, this Court lacks jurisdiction over an appeal from the denial of a defendant's summary judgment order based on qualified immunity insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial. *Johnson v. Jones*, 515 U.S. 304, 319–20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). We may exercise jurisdiction over such an order when we are presented with "neat abstract issues of law." *Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir.1997).

vestigative detention must be based upon reasonable suspicion. The court views the totality of the circumstances to see whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). Just like her husband's seizure and detention, the seizure and detention of Tina Cortez was based on the allegations of the two-year-old girl. The alleged statement of the two-year-old child, however, alleged no wrongdoing as to Tina Cortez whatsoever. Furthermore, the statement did not indicate a likelihood that she would destroy material evidence. *See Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Therefore, we find that Tina Cortez has demonstrated that a clearly established constitutional right has been violated. Consequently, the Defendants are not entitled to qualified immunity as to her wrongful seizure claim, as the existence of neither reasonable suspicion nor "arguable reasonable suspicion" has been shown.[12]

## II. Exigent Circumstances

### A. Legal Framework

 The Defendants contend that exigent circumstances were present in this case that allowed them to enter the Cortez's home, arrest them, and search the house. "[E]mergency conditions may make a warrantless search or arrest constitutional where probable cause exists." *United States v. Maez*, 872 F.2d 1444, 1451 (10th Cir.1989). Exigent circumstances may exist which involve a "plausible claim

of specially pressing or urgent law enforcement need." *Illinois v. McArthur*, 531 U.S. 326, 331, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001), for example the destruction of evidence. Obviously, officers may not simply recite urgent needs without factual support. Otherwise, the exception swallows the rule.[13] Exigent circumstances exist when: (1) the law enforcement officers have *reasonable grounds* to believe that there is immediate need to protect their lives or others; (2) the search is not motivated by an intent to arrest and seize evidence; and (3) there is some reasonable basis, *approaching probable cause*, to associate an emergency with the area or place to be searched. *Roska v. Peterson*, 304 F.3d 982, 989 (10th Cir.2002) (emphasis added).

### B. Application

 The Defendants have offered nothing, beyond innuendo and speculation, to establish a "reasonable basis, approaching probable cause," that an emergency existed within the Plaintiffs' home. The Defendants have failed to articulate any specific facts that led them to believe the Plaintiffs posed a threat to the officers or others. In fact, the record indicates the opposite conclusion is appropriate. The record establishes that the Plaintiffs were asleep at the time the Defendants arrived at the home. The interior, as well as exterior lights, were off. Rick Cortez answered the door wearing only a pair of shorts. He cooperated with the officers as they voiced their commands. No evidence in the record establishes the presence of other people in the home. Additionally, no evidence in the record establishes a "rea-

---

**12.** Because we can find neither reasonable suspicion or "arguable reasonable suspicion" to justify her seizure and detention, it is axiomatic that the Defendants are not entitled to qualified immunity if we were to treat her detention as an arrest.

**13.** For similar reasons, we reject Defendants' argument that New Mexico law requiring prompt investigation of child abuse allegations creates an "inherent exigency".

sonable basis, approaching probable cause," to associate an emergency with the area to be searched. *Roska,* 304 F.3d at 989. The only basis for the search was the unsubstantiated allegation of the nurse. We do not believe this evidence establishes an emergency. Therefore, we agree with the district court that a finding of exigency was inappropriate based on the evidence presently contained in the record.

■ Additionally, warrantless entry into homes is allowed if: (1) pursuant to clear evidence of probable cause; (2) a serious crime where destruction of evidence is *likely;* (3) the search is limited in scope; and, (4) it is supported by clearly defined indicators of exigency that are not subject to police manipulation. *United States v. Scroger,* 98 F.3d 1256, 1259 (10th Cir.1996). In spite of the fact that the Defendants failed to establish factors one, two, or four, they argue that the warrantless entry into the home was constitutional. We affirm the ruling of the district court denying qualified immunity in this regard.

## III. Excessive Force Claims

Plaintiffs also allege a violation of their rights under the Fourth and Fourteenth Amendments to be free from the use of excessive force. Specifically, Plaintiffs claim that Defendants used excessive force in seizing them. (Aplt.App. 25; Aple. Br. 21–24.)

### A. Legal Framework

■ "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The degree of physical coercion that law enforcement officers may use is not unlimited, however, and "all claims

that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.* at 395, 109 S.Ct. 1865. In defining the parameters of this reasonableness standard, the *Graham* Court stated:

> Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.... Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application ... its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

490 U.S. at 396, 109 S.Ct. 1865 (quotations, citations and alteration omitted); *see also Tennessee v. Garner,* 471 U.S. 1, 8–9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) ("[T]he question [is] whether the totality of the circumstances justifie[s] a particular sort of ... seizure.").

The *Graham* Court continued:

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a

judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

As in other Fourth Amendment contexts, however, the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Id.* at 396–97, 109 S.Ct. 1865 (citations and quotations omitted). Furthermore, we have previously held that "the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property, and privacy interests—a person's sense of security and individual dignity." *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1196 (10th Cir.2001).

With all that said, we must remember to view this litigation through the prism of qualified immunity. The first step is to determine whether, based on the allegations, a constitutional violation can be found. The second step is to determine if "the law ... put the officer[s] on notice that [their] conduct would be clearly unlawful." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151. The nature of qualified immunity recognizes, that "a defendant officer could use force in making an arrest that is later judged to be excessive enough that it violates the Fourth Amendment" and we would still have to grant the defendant qualified immunity "if prior decisions did not clearly establish that the use of that force in those circumstances was constitutionally excessive." *Johnson v. Breeden,* 280 F.3d 1308, 1321 (11th Cir.2002).

We first consider Defendants' use of force against Rick Cortez, then Defendants' use of force against Tina Cortez. For the reasons stated below, we affirm the district court's denial of qualified immunity to Defendants on the claim that Defendants used excessive force in their dealings with Rick Cortez; however, we reverse in regards to Tina Cortez.

## B. Defendants' Use of Force Against Rick Cortez

We take Plaintiffs' allegations as true, and view the evidence in the light most favorable to Plaintiffs, as we must in reviewing the district court's denial of qualified immunity. *See Thornton v. City of Macon,* 132 F.3d 1395 (11th Cir.1998). It appears that Defendants (1) grabbed Rick Cortez by the arm and pulled him from the doorway of his home; (2) handcuffed him; and (3) placed him in the back seat of a locked squad car—all in the middle of the night.

As we discussed above, when Plaintiffs' allegations are taken as true, it appears that Rick Cortez was arrested. *See Kaupp v. Texas,* 538 U.S. 626, 631, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003) ("A ... boy was awakened ... at three in the morning by at least three police officers.... He was taken out in handcuffs, without shoes, dressed only in his underwear in January, placed in a patrol car, driven to the scene of a crime and then to the sheriff's offices, where he was taken into an interrogation room and questioned. This evidence points to arrest...."); *Dun-*

*away v. New York,* 442 U.S. 200, 212–13, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (describing a situation where an individual was, *inter alia,* "taken from a neighbor's home to a police car" as analogous to an arrest).

Because it also appears, when the evidence is construed in the light most favorable to Plaintiffs, that Defendants lacked probable cause for this arrest, we held above that Defendants are not entitled to qualified immunity on Plaintiffs' claim that Rick Cortez was seized unreasonably. Our holding on qualified immunity does not resolve conclusively the question of whether Rick Cortez was seized unreasonably, however, for that is a question that must be decided after adversarial testing of Plaintiffs' allegations. Indeed, such adversarial testing might result in a determination that Rick Cortez was (1) unreasonably arrested; (2) unreasonably subjected to an investigative detention; (3) reasonably arrested; or (4) reasonably subjected to an investigative detention.

This range of potential outcomes complicates our analysis of whether Defendants are entitled to qualified immunity on Plaintiffs' claim that Defendants used excessive force against Rick Cortez, because under each potential outcome on the seizure issue the analysis of whether Plaintiffs have established that Defendants' use of force violated Rick Cortez's rights under the Fourth and Fourteenth Amendments differs slightly. While the nature of the inquiry does not differ, *see Graham,* 490 U.S. at 396, 109 S.Ct. 1865, the benchmark for what is reasonable does differ. *But cf. United States v. Merritt,* 695 F.2d 1263, 1274 (10th Cir.1982). This is in part because police have historically been able to use more force in making an arrest than in effecting an investigative detention. *Cf. United States v. Perdue,* 8 F.3d 1455, 1464 (10th Cir.1993) ("[H]istorically, the maxi-

mum level of force permissible in a standard *Terry* stop fell short of placing the suspect in 'custody' for purposes of triggering *Miranda.*"). We analyze the excessive force issue under each potential outcome in turn.

### 1. Unlawful Arrest or Unlawful Investigative Detention

Assuming for the sake of argument that Rick Cortez was subjected to either an otherwise unreasonable arrest or an otherwise unreasonable investigative detention—that is, an arrest unsupported by probable cause or an investigative detention unsupported by reasonable suspicion—Plaintiffs' claim that Defendants used excessive force against Rick Cortez should not survive Defendants' summary judgment motion because Plaintiffs could not recover separately on an excessive force claim. Thus, it appears that the district court erred by denying Defendants' summary judgment on these grounds. *See* (Aplt.App.190.) ("If there was no legal justification to detain Plaintiffs in the first place ... the County Defendants cannot rely on ... authorities [stating that officers may use force to effect a legal arrest or investigative detention] to justify their use of force in effecting that detention.").

The district court is not the only court to have suggested that any force used in effecting an unlawful seizure is per se excessive. *See Schiller v. Strangis,* 540 F.Supp. 605, 617 (D.Mass.1982) ("[T]he use of force occurred during commission of other constitutional violations, including an unlawful arrest, an unlawful entry into the home, and unlawful searches of plaintiff's person, wallet, and car. In the circumstances of this case, the use of any force by [the law enforcement officer] was excessive since the arrest and the searches were themselves unlawful.").

The Eleventh Circuit, however, has taken a different approach, noting that "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Jackson v. Sauls,* 206 F.3d 1156, 1171 (11th Cir.2000). This is because "if a stop or arrest is illegal, then there is no basis for any threat or any use of force, and an excessive force claim would always arise but only collaterally from the illegal stop or arrest claim." *Id.; see also Williamson v. Mills,* 65 F.3d 155, 158–59 (11th Cir.1995) (per curiam).[14]

■ Under the Eleventh Circuit's approach, a plaintiff may not recover on an independent excessive force claim merely because force was applied during an unlawful seizure. *See Motes v. Myers,* 810 F.2d 1055, 1059 (11th Cir.1987) (stating that "[i]t is obvious that if the jury finds the arrest unconstitutional, the use of force and the search were unconstitutional and they become elements of damages for the § 1983 violation"). If force was applied during a lawful seizure, however, a plaintiff may recover on an independent excessive force claim. *See Lee v. Ferraro,* 284 F.3d 1188, 1197 (11th Cir.2002) ("Once summary judgment is granted in [the officer]'s favor on the wrongful arrest claim, [the plaintiff]'s claim that the officer used excessive force must be analyzed independently.").

We find the Eleventh Circuit's approach persuasive. Any force that law enforcement officers apply in order to effect a seizure is, by definition, excessive if the seizure is unlawful. Therefore, when an excessive force claim rests solely on an allegation that the force was excessive because the underlying seizure itself was unlawful the excessive force claim is derivative: it necessarily exists as a result of the unlawful seizure, and does not constitute a separate claim for relief. To permit a jury to award damages on both claims individually would allow a plaintiff to receive double the award for essentially the same claims. Moreover, it would be nearly impossible for a jury to apportion damages between an unlawful seizure claim and an excessive force claim, when the excessive force claim is based solely on the unlawfulness of the seizure. Therefore, it is most proper to allow no more than one recovery under such circumstances, with the level of force used in effecting the unlawful seizure playing a role in the calculation of damages for that seizure.

Thus, in this case, if Rick Cortez was subjected to an unlawful arrest or an unlawful investigative detention, Plaintiffs' claim that Defendants used excessive force against Rick Cortez should not survive Defendants' summary judgment motion because Plaintiffs could not independently recover on that excessive force claim.

### 2. Lawful Arrest

■ Assuming for the sake of argument that Rick Cortez was subjected to an otherwise lawful arrest—that is, an arrest supported by probable cause—Plaintiffs' claim that Defendants used excessive force against Rick Cortez should not survive Defendants' summary judgment motion

14. In *Williamson,* an officer arrested the plaintiff without probable cause, and the plaintiff claimed that "there was no need for any force as the force was used to accomplish an unlawful arrest." 65 F.3d at 158. The Eleventh Circuit held that the "damages recoverable on [the plaintiff's] false arrest claim include damages suffered because of the use of force in effecting the arrest," that "[u]nder these circumstances, [the plaintiff's] excessive force claim is subsumed in his false arrest claim," and thus that there was "no reversible error in the district court's grant of summary judgment on the excessive force claim as a discrete claim." *Id.* at 158–59.

because Plaintiffs have not demonstrated that Defendants' use of force against Rick Cortez could be considered excessive in the context of a lawful arrest.

■ Rick Cortez was suspected of committing a violent felony, a severe crime. *Cf. Graham,* 490 U.S. at 396, 109 S.Ct. 1865. As we discuss more fully below, Rick Cortez does not appear to have posed an immediate threat to the safety of the officers or others, or to have been attempting to resist or evade arrest, *cf. id.,* but the force used by Defendants nonetheless was not excessive if the underlying arrest was supported by probable cause. After all, when arresting a person suspected of committing a violent felony, law enforcement officers generally may (1) grab the arrestee by the arm; (2) handcuff him or her; and (3) place him or her in the back seat of a locked squad car—all without the force used being excessive, whether the actions are undertaken at night or during the day. *Cf. Soares v. State of Conn.,* 8 F.3d 917, 921 (2d Cir.1993) ("[H]andcuffing will be the reasonable course in many, if not most arrest situations...."); *Rodriguez v. Farrell,* 280 F.3d 1341, 1351 (11th Cir.2002) ("The evidence, in the light most favorable to plaintiff, shows that [the officer] grabbed plaintiff's arm, twisted it around plaintiff's back, jerking it up high to the shoulder and then handcuffed plaintiff.... Plaintiff was placed in the rear of [the officer]'s patrol car, kept handcuffed behind his back and transported to the police station. The handcuffs were removed minutes after ar-

rival at the police department. The handcuffing technique used by [the officer] is a relatively common and ordinarily accepted non-excessive way to detain an arrestee.").[15]

Moreover, the precise manner in which Defendants undertook these actions does not support Plaintiffs' claim that Defendants used excessive force against Rick Cortez. Plaintiffs do not criticize the manner in which Defendants grabbed Rick Cortez's arm or the manner in which Defendants placed Rick Cortez in the back of the squad car. *Cf. Thornton,* 132 F.3d at 1398 (addressing excessive force claim based on officers' grabbing the plaintiff on his arms and around his neck, throwing the plaintiff to the floor, handcuffing him, picking him up by his arms, and dragging him outside to throw him into a police car).

Plaintiffs allege that Defendants used excessive force in applying handcuffs too tightly to Rick Cortez. The record, however, presents little evidence of any damage to Rick Cortez's wrists. The only evidence of damages in the record is his affidavit that the handcuffing left red marks that were visible for days afterward. (Aplt.App. at 88.) This is insufficient, as a matter of law, to allege excessive force if the use of handcuffs is otherwise justified. *Cf. Hannula v. Lakewood,* 907 F.2d 129, 132 (10th Cir. 1990) (upholding—under a substantive due process standard, rather than a Fourth Amendment reasonableness standard—a grant of qualified immunity to officers accused of fastening handcuffs too tightly on a plaintiff when there was

---

**15.** In stating that law enforcement officers may in general take such steps under circumstances like these, we are not crafting a rule of per se reasonableness, which would be at odds with the Supreme Court's holding in *Graham* that the particular facts of each case must be examined when making a determination of the reasonableness of the force used. *See Kostrzewa v. City of Troy,* 247 F.3d 633,

645 (6th Cir.2001). There are certain instances in which taking such steps may amount to the use of constitute excessive force. *See Walton v. City of Southfield,* 995 F.2d 1331, 1342 (6th Cir.1993) ("An excessive use of force claim could be premised on [the officer]'s handcuffing [the plaintiff] if he knew that she had an injured arm and if he believed that she posed no threat to him.").

"no evidence of contusions, lacerations or damage to the bones or nerves of her wrists .... [and][t]he evidence establishe[d] nothing more than that the handcuffing caused her pain"). *But cf. Lambert v. City of Dumas*, 187 F.3d 931 (8th Cir.1999).[16]

Indeed, neither the fact that Defendants took certain actions, nor the manner in which Defendants took those actions, appears problematic in connection with an otherwise lawful arrest. Therefore, if Rick Cortez was lawfully arrested, Plaintiffs' claim that Defendants used excessive force against Rick Cortez should not survive Defendants' summary judgment motion because, even taking Plaintiffs' allegations as true and viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs have not established that Defendants' use of force against Rick Cortez violated Rick Cortez's Fourth and Fourteenth Amendment right to be free from the use of excessive force. In other words, the Defendants would be entitled to qualified immunity on Rick Cortez's excessive force claim.

### 3. Lawful Investigative Detention

■ Assuming for the sake of argument that Rick Cortez's seizure is determined to be only a lawful investigative detention, Plaintiffs' claim that Defendants used excessive force against Rick Cortez should survive Defendants' summary judgment motion. When Plaintiffs' allegations are taken as true, Plaintiffs have demonstrated that Defendants' use of force against Rick Cortez violated Rick Cortez's Fourth and Fourteenth Amendment right to be free from the use of excessive force in the context of an investigative detention, and this right was clearly established at the time of Defendants' actions.

■ "Since police officers should not be required to take unnecessary risks in performing their duties, they are 'authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of a *Terry* stop.'" *Perdue*, 8 F.3d at 1462 (quoting *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985)) (alterations omitted). "While *Terry* stops generally must be fairly nonintrusive, officers may take necessary steps to protect themselves if the circumstances reasonably warrant such measures." *Id.; see also Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1030–

---

**16.** The *Lambert* court stated:

> Appellants contend that they are entitled to qualified immunity with respect to the Appellee's claim of excessive force, arguing that Lambert suffered only minor injuries as a result of the force used by them, which were not sufficiently serious to support an excessive force claim. This Court has specifically rejected the "significant injury" requirement proposed by the Appellants [and used by the *Hannula* court]. *See Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir.1995). "Assuming without deciding that [a plaintiff bringing an excessive force claim against police officers] must have suffered some minimum level of injury to proceed ..., we conclude that the necessary level of injury is actual injury." *Id.* In *Dawkins*, we concluded that the plaintiffs had suffered

> "actual injury" because one plaintiff had sustained bruises and a facial laceration, another sustained bruised knees and elevated blood pressure, and a third suffered from posttraumatic stress disorder. *See id.* In the instant case, the Appellants have conceded that Lambert suffered "[a] single small cut of the lateral right eyelid and small scrapes of the right posterior knee and upper calf...." Assuming—as we did in *Dawkins*—that a plaintiff bringing an excessive force claim must show "actual injury," we conclude that the Appellee's evidence satisfies such a requirement.

187 F.3d at 936 (citations and footnote omitted); *see also Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir.1994) (abandoning the "significant injury" requirement for excessive force claims).

31 (10th Cir.1997) ("As long as the precautionary measures employed by officers during a *Terry* stop are reasonable, they will be permitted without a showing of probable cause. In determining whether the precautionary measures were reasonable, the standard is objective—would the facts available to the officer at the moment of the seizure warrant a man of reasonable caution in the belief that the action taken was appropriate.") (quotations, citations, and alteration omitted).

 In many cases, law enforcement officers effecting an investigative detention permissibly may grab a free citizen by the arm. *See Terry*, 392 U.S. at 7, 88 S.Ct. 1868 (upholding officer's grabbing of suspect based only on reasonable suspicion). In a significantly smaller set of cases, officers may also handcuff the citizen and place him in the back seat of a locked squad car. As we noted in *Perdue*, a number of courts of appeals, including the Tenth Circuit, have determined that officers' use of handcuffs or ordering suspects to the ground during a *Terry* stop does not necessarily turn a lawful *Terry* stop into an arrest. *Perdue*, 8 F.3d at 1463; *see United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir.1993). "[W]hen circumstances reasonably indicate that the suspects are armed and dangerous, courts have been willing to rely on the 'officer safety' rationale of *Terry* and authorize the use of handcuffs, the placing of suspects in police cruisers, the drawing of weapons, and other measures of force more traditionally associated with the concepts of 'custody' and 'arrest' than with 'brief investigatory detention.'" *Perdue*, 8 F.3d at 1464.

In this case, Defendants' grabbing Rick Cortez by the arm is not problematic for excessive force purposes. *See Gallegos*, 114 F.3d at 1030 ("We believe [an officer]'s actions were reasonably related in scope to the circumstances justifying the stop. [The officer] grabbed [the plaintiff]'s arm in an effort to briefly detain [the plaintiff] and confirm or dispel his suspicions. Although [the officer] grabbed [the plaintiff's] arm three separate times, his actions consisted of a relatively minor application of force that did not exceed the amount allowable under the circumstances."); *Smith v. City of New Haven*, 166 F.Supp.2d 636, 643 (D.Conn.2001) (granting an officer qualified immunity from a plaintiff's excessive force claim because the officer had merely placed his arm on the plaintiff as he escorted the plaintiff to the police car). Defendants' handcuffing Rick Cortez and placing him in the back seat of a locked squad car is, however, more troubling.

There is no indication in the record that Rick Cortez actively resisted seizure or attempted to evade seizure by flight. *Cf. Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Rick Cortez opened the door of his residence to police voluntarily. (Aplt.App.96.) Although Rick Cortez briefly asked Defendants what was going on before complying with their commands by moving to exit his residence, this does not amount to resistance. (Aplt.App.87.) Rick Cortez was cooperating with Defendants, which suggests that Defendants did not need to use force beyond that traditionally used in a *Terry* stop in order to effectuate the purpose of the stop. *Cf. United States v. Patterson*, 648 F.2d 625, 633 (9th Cir.1981) ("Proscription of excessive force is merely the corollary to our holding that an 'officer attempting to make an investigatory detention may properly display some force when it becomes apparent that an individual will not otherwise comply with his request to stop.'") (quoting *United States v. Thompson*, 558 F.2d 522, 524 (9th Cir. 1977)).

Nor is there any indication in the record that Rick Cortez posed an immediate threat to the safety of Defendants or others. *Cf. Muehler,* 125 S.Ct. at 1470–71 (terming "inherently dangerous" circumstances in which "a warrant authorizes a search for weapons and a wanted gang member resides on the premises"); *Perdue,* 8 F.3d at 1463 ("In the present case, the officers were justified in displaying some force. The officers knew that guns were found on the property where marijuana was being cultivated. This fact alone justifies any concern the officers had for their personal safety."). For example, there is no evidence in the record to support a reasonable suspicion that Rick Cortez was armed. (Aplt.App.87.) ("I went to the front door, wearing only shorts. . . .").

Defendants argue that "officer safety concerns" informed their treatment of Rick Cortez. It is established that:

> Whatever might qualify as "reasons of safety and security" . . . the requisite justification cannot rest upon bald assertions . . . that law enforcement officers were in fact prompted to act on such reasons.

*United States v. Acosta–Colon,* 157 F.3d 9, 17 (1st Cir.1998); *see also Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir.1991) ("Material factual disputes cannot be resolved at summary judgment based on conflicting affidavits. To come within the protection of this rule, however, the nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.") (footnote and citation in original omitted). In this case, the government has failed to explain what threat one man wearing only shorts posed to the four armed law enforcement officers who detained him outside his home in the middle of the night.

Therefore, if Rick Cortez was lawfully subjected to an investigative detention, when Plaintiffs' allegations are taken as true, Plaintiffs have established that Defendants' use of force against Rick Cortez violated Rick Cortez's Fourth and Fourteenth Amendment right to be free from the use of excessive force because that use of force was not reasonable under the circumstances. In addition to being a violation of Rick Cortez's constitutional right, the right to be free from excessive force during an investigative detention was clearly established at the time that Defendants seized Rick Cortez, for *Perdue* and *Gallegos* are on point and were decided well before that time. *See Medina,* 960 F.2d at 1498. Therefore, Plaintiffs' claim that Defendants used excessive force against Rick Cortez should survive Defendants' summary judgment motion if Rick Cortez was subjected to an investigative detention.

Based on the foregoing analysis, it is apparent that there is but one way that Rick Cortez could recover damages on the basis of a discrete excessive force claim. That is the situation where it is determined that (1) Rick Cortez's seizure was an investigative detention, and not an arrest; (2) the investigative detention was justified on the basis of articulable suspicion; and (3) the force used to accomplish the investigative detention was excessive. There is evidence in the summary judgment record before us that would authorize all three of these findings if the case were to proceed to trial. Accordingly, summary judgment for Defendants against Rick Cortez on his excessive force claim is not justified. We therefore affirm the district court's denial of summary judgment to Defendants as to Plaintiffs' claim that Defendants used excessive force against Rick Cortez.

### C. Defendants' Use of Force Against Tina Cortez

■ Taking Plaintiffs' allegations as true, and viewing the evidence in the light most favorable to Plaintiffs, it appears that Defendants (1) entered Tina Cortez's home in the middle of the night; (2) physically separated Tina Cortez from her telephone; (3) took her by the arm; (4) escorted her from her home; and (5) placed her in the locked back seat of a patrol car. Tina Cortez has alleged no injury based on Defendants' use of force against her.

As we discussed above, when Plaintiffs' allegations are taken as true, Tina Cortez was subjected to an investigative detention and not an arrest. Because when Plaintiffs' allegations are taken as true it appears that this investigative detention was not justified, we held that Defendants are not entitled to qualified immunity on Plaintiffs' claim that Tina Cortez was seized unreasonably. Our holding on qualified immunity does not resolve conclusively the question of whether Tina Cortez was seized unreasonably, however, because a trial could establish that Tina Cortez was either reasonably or unreasonably detained for investigation.

■ If a trial were to establish that Tina Cortez was seized unreasonably, Tina Cortez could not recover on an independent excessive force claim. This is because, as we held earlier, an excessive force claim is subsumed within an unjustified seizure claim. If a trial, however, were to establish that the investigative detention of Tina Cortez was reasonable,

Tina Cortez possibly could recover on an independent excessive force claim.

Each individual aspect of the way that Plaintiffs allege that Defendants treated Tina Cortez, when viewed in isolation, is not enough to sustain an excessive force claim. Cf. *Gallegos,* 114 F.3d at 1030; *Smith,* 166 F.Supp.2d at 643. Considering all of the facts together, however, remembering that the encounter is alleged to have occurred in the middle of the night, a jury might find that Defendants used excessive force against Tina Cortez. We nevertheless conclude that the district court should be reversed regarding this claim.

■ "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151 (citation omitted); See also *Brosseau v. Haugen,* 543 U.S. 194, 125 S.Ct. 596, 599, 160 L.Ed.2d 583 (2004)(holding "[q]ualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted"). We cannot say that the officers' conduct regarding Tina Cortez was so clearly unlawful under prior case law that a reasonable officer could not have believed the conduct was legal. Therefore, we must reverse the trial court's denial of Defendants summary judgment motion as to Tina Cortez's excessive force claim.[17]

---

**17.** Additionally, to the extent that Plaintiffs may argue that Defendants' entry of Plaintiffs' residence to seize Tina Cortez gives rise to an excessive force claim, that argument is not persuasive. Typically, plaintiffs' claims that officers unreasonably used force to enter a residence are not litigated as excessive force claims, but rather as illegal search or seizure claims. See, e.g., *Wilson,* 514 U.S. at 927, 115 S.Ct. 1914; *Gallegos,* 314 F.3d at 456. This is because any claim that the officers used excessive force in entering the residence is subsumed within the illegal search or illegal seizure claims. Thus, the force Defendants used in entering Plaintiffs' residence should not give rise to an independent excessive force claim.

## IV. Clams Against Defendant Bowdich

██ Finally, the Defendants maintain that the Plaintiffs have no evidence to support a claim against Defendant Bowdich for his supervision of Defendant Gonzales and therefore summary judgment should have been granted for Defendant Bowdich. The Plaintiffs contend that the district court was correct in applying Fed. R.Civ.P. 56(f), which states, "[s]hould it appear from the affidavits of [the nonmoving party] that the party cannot . . . present by affidavit facts essential to justify the party's opposition, the court may refuse . . . judgment or may order continuance to permit . . . discovery."

██ The standard of review, despite the Defendants' assertion to the contrary, is abuse of discretion. *See Weir v. Anaconda Co.*, 773 F.2d 1073, 1081 (10th Cir. 1985) (district courts have the discretion to permit additional discovery); *Guthrie v. Sawyer*, 970 F.2d 733, 738 (10th Cir. 1992)("[T]he court did not abuse its discretion in granting summary judgment without permitting further discovery"); *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 833 (10th Cir. 1986)("[N]o abuse of discretion in" deciding summary judgment). The Defendants assert that the mere declaration that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable is not enough to invoke Rule 56(f). *Pasternak*, 790 F.2d at 832. This is true, albeit irrelevant. In *Pasternak*, no party filed an affidavit or notified the court of any necessity of conducting additional discovery. Furthermore, and most importantly, in *Pasternak* the court did not stay discovery. In the present case, the district court ruled that the Plaintiffs "made a meritorious showing under Fed.R.Civ.P. 56(f)" and "[f]urther, discovery has been stayed pending a ruling on the other individual County Defendants'

claims . . . thereby precluding Plaintiffs from conducting necessary discovery." Order of 3/17/04 at 11, 12. Clearly, this is not a case involving a 'mere assertion' of incomplete discovery. Consequently, we are unable to find that the district judge abused her discretion in denying the motion without prejudice.

## V. Conclusion

For the foregoing reasons, we **REVERSE** the district court's denial of the motion for partial summary judgment as to the excessive force claim of Tina Cortez. In all other respects, the district court is AFFIRMED. The case is remanded for further proceedings not inconsistent with this Opinion.

*Cortez v. McCauley*, 04–2062

HENRY, J., concurring in part and dissenting in part.

Although I agree with many aspects of the majority's opinion, I write separately to express my concerns with its approach to excessive force claims, as well its application of the newly articulated excessive force rule to the Cortez's claims. In my view, the rule announced by the majority does not comport with Fourth Amendment jurisprudence. The Supreme Court has often cautioned that the reasonableness of a particular use of force depends upon the totality of the circumstances, and that this reasonableness standard, the amendment's "touchstone," *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (internal quotation marks omitted), must be reviewed with "careful attention to the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "In applying this test, [the Court has] consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inqui-

ry." *Robinette*, 519 U.S. at 39, 117 S.Ct. 417.

Mindful of these concerns, I concur in the result of this opinion except with respect to Tina Cortez's excessive force claim. In my view, Ms. Cortez's excessive force claim is not subsumed in her wrongful detention claim. Moreover, the district court properly concluded that the defendant officers are not entitled to qualified immunity on that claim. Viewing the record in the light most favorable to Ms. Cortez, the officers violated her clearly established right to be free from excessive force.

## I. *Inapplicability of the Eleventh Circuit Rule*

Under the Eleventh Circuit's rule discussed in the majority opinion, "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." Maj. Op. at 996 (quoting *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir.2000)). We must be careful not to take this rule out of its narrow context. In *Jackson*, the Eleventh Circuit was addressing a qualified immunity defense when the plaintiffs had advanced two separate legal theories for their excessive force claims: (1) that *any* force was excessive because the stop was illegal, and (2) that even if the stop was legal, the defendants used excessive force. *Jackson*, 206 F.3d at 1170. After explaining that its prior precedent in *Williamson v. Mills*, 65 F.3d 155, 158–59 (11th Cir.1995) (per curiam) had held that "a claim that any force used during a false arrest is excessive is subsumed in the false arrest claim itself," the court went on to explain that

> *Williamson*'s rule makes sense because if a stop or arrest is illegal, then there is no basis for any threat or any use of force, and an excessive force claim would

always arise but only collaterally from the illegal stop or arrest claim. The correct analysis is that the excessive force claim is subsumed in the illegal stop or arrest claim, as recognized in *Williamson*, where a "plaintiff contends the force was excessive because there was no basis for *any* force."

*Id.* at 1171.

I do not believe this rule applies in the circumstances presented here. In *Williamson* and *Jackson*, the plaintiffs specifically alleged that *any* use of force was, per se, unreasonable simply because the stop or arrest was illegal. *See Jackson*, 206 F.3d at 1170–71 ("Plaintiffs assert that because there was no basis for the stop and no governmental interest at stake, *any* use of force, however minimal, was more than reasonably necessary and excessive."); *Williamson*, 65 F.3d at 158 ("[The plaintiff] argues that there was no need for *any* force as the force was used to accomplish an unlawful arrest.") (internal quotation marks omitted). Here, the Cortezes do not make such an argument, either in their complaint or on appeal. Their complaint specifically hinges the excessive force claim on the following facts: "including but not limited to grabbing Plaintiffs and pulling them out of their home, seizing the telephone from Tina Cortez, and handcuffing Rick Cortez unnecessarily tightly while interrogating him." Aplts' Appx. at 25 (Am. Compl., dated Mar. 10, 2003). Their appellate brief certainly advocates the position that the police unlawfully detained or arrested them, but neither of the plaintiffs hints that his or her excessive force claims rest solely on the fact that he or she was unlawfully seized. *See* Aples' Br. at 22–24 ("Mr. Cortez complained to the officer . . . that the handcuffs were so tight that they were causing him pain. . . . Defendant McCauley grabbed Tina Cortez by the arm, prevented her from using her

telephone, and removed her from her home. . . ."). Therefore, even if I believed the Eleventh Circuit rule was appropriate, I would not apply it in the circumstances of this case.

## II. Tina Cortez's Excessive Force Claim

Pursuant to the analytical framework outlined in the majority opinion, the only way that Ms. Cortez could recover for a claim of excessive force is if she was lawfully subjected to an investigative detention. I have already explained the problems I perceive in adopting the majority's approach to excessive force claims, but even pursuant to that approach, I believe the officers' alleged conduct violated Ms. Cortez's clearly established constitutional right to be free from excessive force.

In order to overcome the defendants' claim of qualified immunity, Mr. and Ms. Cortez must show that the defendants' actions violated a specific constitutional right and that the right was clearly established at the time of the conduct at issue. *See Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir.2000). The Tenth Circuit has held that, in order for the right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992). Recently, however, the Supreme Court explained that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). The "salient question . . . is whether the state of the law [at the time of the incident] gave the [defendants] fair warning" that their conduct was unconstitutional. *Id.*

The right to make a lawful investigatory detention "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Any claim that an officer used excessive force "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness standard.'" *Id.* at 395, 109 S.Ct. 1865. In the context of a *Terry* stop/investigative detention, the Tenth Circuit has held that police officers may " 'take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo.'" *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir.1993) (quoting *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985)).

With respect to Ms. Cortez, the officers involved should have known that they were permitted to use only as much force as was necessary to secure their own safety and maintain the status quo. Under prior case law in the Tenth Circuit, officers are required to articulate specific justifications for uses of force during an investigative detention, such as locking a person in a police cruiser. *See, e.g., Perdue*, 8 F.3d at 1464 (explaining that "historically, the maximum level of force permissible in a standard *Terry* stop fell short of placing the suspect in 'custody' for the purposes of triggering *Miranda*," but that if circumstances indicate a suspect is armed or dangerous, then it is permissible for officers to use "other measures of force more traditionally associated with the concepts of 'custody'" such as "placing suspects in police cruisers [or the] drawing of weapons"); *United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir.1993) (permitting the display of firearms and the use of handcuffs during a *Terry* stop when officers had reason to believe the suspect was dangerous).

The defendants assert that if they had left Ms. Cortez in her home alone, she could have destroyed evidence related to her husband's alleged child molestation, but they have provided no particularized facts on which to base this claim. Moreover, viewing the facts in the light most favorable to Ms. Cortez, the level of force the defendants used against Ms. Cortez was unreasonable in relation to the threat that she presented. Although it is generally permissible to hold a person by the arm during an investigative detention, defendants have not articulated any reasonable safety concerns or flight concerns that would justify the extra force that they used against Ms. Cortez—escorting her from her bedroom in the middle of the night and keeping her in a locked police vehicle for nearly an hour. Therefore, despite the fact that Ms. Cortez's claim may present a novel issue of fact for this circuit, the officers had "fair warning" that their alleged conduct was unconstitutional under clearly established precedent in the Tenth Circuit.